## Case No. 237.

### ALLEN et ux. v. SIMONS et al.

[1 Curt. 122.][1]

Circuit Court, D. Rhode Island. June Term, 1852.

EXECUTORS AND ADMINISTRATORS — AGREEMENT NOT TO TAKE ADMINISTRATION — ENFORCEMENT IN EQUITY—PARTIES.

1. An executor, or administrator, is a necessary party to a bill to enforce a trust concerning property of the deceased.

2. An agreement among distributees, that no administration shall be taken, and that one of them, who was the apparent owner of the property at the death of the intestate, should continue to hold and manage it for the joint benefit of all, the intestate being much indebted at the time of his decease, cannot be enforced in equity.

In equity. The opinion of the court contains a full statement of the case.

Before CURTIS. Circuit Justice, and PITMAN, District Judge.

CURTIS, Circuit Justice. This is a bill in equity, wherein Russell W. Allen, and Agatha G., his wife, state, that she is one of the children and heirs at law of William Simons,

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

late of the city of Providence, deceased, intestate; that at the time of his decease the intestate was lawfully possessed of, and well entitled to, certain personal property, consisting of a newspaper establishment, together with the good-will of the newspaper called the Republican Herald; that since the 27th day of June, 1829, the apparent title to the property in question had stood in the name of William Simons, Jr., the eldest son of the deceased, and the business of the newspaper had also been conducted in his name; but that, in point of fact, he held the property, and transacted the business, during the lifetime of his father, only as an agent, or trustee; that William Simons died intestate, on the 6th of March, 1845, and thereupon William junior, and the other children of the deceased, agreed that the establishment should be conducted as before; and it was so conducted until the death of William junior, in 1849. The bill makes the widow and administrator of William junior parties, and also joins as defendants the three other children of William senior, and prays that the documents, whereby title was conveyed, or pretended to be conveyed, to William junior by his father, may be cancelled; that an account may be taken of the property of William senior, and of the profits of the business while conducted by, or in the name of William junior; that it may be declared that the complainant, Agatha, as one of the children and heirs at law of William senior, is justly entitled to her share of the property and proceeds, according to the statute of distributions of Rhode Island; that a commission of partition may issue to divide the property into five equal parts, and that one of those parts may be allotted to the complainants, and for further or other relief.

The answers of the widow and the administrator of William junior deny the title of the complainants, and of William senior, and assert that William junior held and owned all the property which was in his possession at his decease in his own right, and not as a trustee, and that the business, conducted in his name, was on his own account solely. The answers of the other four children of William senior confess the substance of the bill, but no decree is sought against them, it not being alleged that either of them is in possession of any property of which an account is asked. This statement of the outline of the bill and answers presents the nature of the title made by the complainants. Many allegations are inserted in the bill in support of this title, which are denied by the answers of the widow and administrator of William junior, and much evidence has been taken in reference to these contested facts. The subject in controversy is personal estate.

Whatever may have been the interest of William Simons senior in this property, his children did not acquire that interest by his

decease. The rule of the common law laid down by Lord Coke, (Co. Litt. 8 a,) that a man, by the common law, cannot be heir to goods or chattels, for haeres dicitur ab haeriditate, is in force in Rhode Island, and upon the decease of any one having personal estate, his children do not become its owners. They acquire only that qualified equitable right to distributive shares of what shall remain after payment of the just debts and funeral charges of the deceased, and the expenses of settling his estate, which is conferred upon them by the statute of distributions. Pub. Laws, p. 239. This qualified equitable right can only be worked out through a settlement of the estate by an administrator, appointed according to the laws of the state, who alone has the title to personalty cast on him by those laws, and who alone is competent to sue, either at law or in equity, to reduce the personal property and rights of the intestate to possession. It is true that, after an administrator has been appointed, if he colludes with a debtor to the estate, a court of equity will allow a distributee, having an interest in the estate, to sue the administrator and the debtor, and compel the latter to pay the debt. Calv. Parties, 157. But these, and similar cases of collusion, do not trench at all on the general rule that the executor, or administrator, being entitled to the personal estate, is the proper party to sue. Jones v. Goodchild, 3 P. Wms. 34. In these cases of collusion, the purpose of the suit is to bring the executor, or administrator, and the debtor before the court, and cause the former to assert his title, and thus do his duty as a trustee. And I believe we should look in vain for a case, in which a child of an intestate has been allowed, either at law or in equity, to sustain a suit in the character of heir, or distributee, to recover personal estate of the deceased.

The complainants' counsel has endeavored to overcome this difficulty by the argument that at the decease of William Simons senior, there was a mutual agreement among all his children, that no administration should be taken on his estate, that the property should remain undivided, and that the newspaper should continue to be published for the joint benefit of all the children, and that this constituted William Simons junior a trustee for the others, and so his representatives are estopped to deny the title of the complainant, and this court will decree the execution of the trust. This ground requires a careful examination. It must be observed that the bill asserts the title of William senior, and claims that his children, at his decease, became entitled to this property; that it was then in the possession of William junior, and ostensibly his; that the effect of the agreement with him was, to allow the property to continue in his possession, as if he were its owner, instead of going into the hands of an administrator. If it were true that the children of William senior, at his decease,

became justly entitled to this property, and that only some legal formality was necessary to clothe them effectually with the title, a mutual agreement to dispense with that formality would be enforced, and a court of equity would not allow a party to the agreement, in possession by virtue of it, to set up the want of that legal formality as a bar. His conscience would be bound by the agreement, and the title would be treated substantially as it would have been treated if the legal formality had been complied with. But these complainants do not show themselves justly entitled to any particular part of this property. As has already been stated, the title of a distributee, under the laws of Rhode Island, is only to such surplus as shall remain after the payment of all just debts and charges.

Creditors have the first and best right to the whole extent of their just debts; non constat, therefore, that either of the parties to this agreement would be justly entitled to any thing from this estate, if it had gone into the hands of an administrator; and to hold that the agreement should itself make a title, would put the complainants in a very different situation from what they would have been in if administration had been taken; for it would enable them to call for an account of the property, and take one fifth of the whole to their own use, when they were equitably entitled only to one fifth of what might remain after paying all just debts and charges. It is clear, also, that the whole of this property, if it belonged to William Simons senior, now stands charged with his debts. The statute of Rhode Island, concerning the settlement of intestate estates, (Pub. Laws, p. 239, § 2,) contains an express provision: "When any person shall die possessed of any chattels, or personal estate, the same shall stand chargeable with the payment of all the just debts and funeral charges of the deceased, and the expenses of settling his estate." This charge is one which the agreement among the children, now in question, cannot in any way affect. And I apprehend it is not consistent with the principles upon which a court of equity proceeds, to decree an account among distributees of the property of the deceased, before an administrator has been appointed to represent creditors, when the bill shows that the deceased was indebted, and by law the property is charged with those debts, whatever agreement the distributees may have made among themselves. I am not aware that such a bill was ever maintained, and the reasons against it are very strong. In the first place, the distributees have no right whatever to intermeddle with the personal property of the deceased, for any other purpose than to do such acts as may be necessary to preserve it, until an administrator can be appointed. Any other acts of control, by any person, constitute him an executor de son tort, and subject him, as a penalty,

to the payment of the debts of the deceased. When, therefore, this bill shows that the children of William Simons senior, instead of subjecting this property to the payment of his just debts, in a due course of administration, made an agreement that no administration should be taken, that they would wholly disregard the rights of creditors, and treat the property as their own, it shows an agreement which a court of equity cannot enforce. It is not based on any equitable right of the parties; it is a violation of the common law; it tends to defraud creditors; it is plainly forbidden by public policy; and is inconsistent with that system of statute law providing for the just and orderly settlement of intestate estates, which has been enacted by the legislature.

It is said by Lord Redesdale, (Eq. Pl. 164,) that "it is the constant aim of a court of equity to do complete justice by deciding upon and settling the rights of all persons interested in the subject of the suit, to make the performance of the order of the court perfectly safe to those who are compelled to obey it, and to prevent future litigation." From this principle most of the rules, concerning parties to suits in equity, spring; and it imperatively demands that an administrator of William Simons senior, as the representative of his creditors, should be a party to this bill. The property in question stands charged with all his just debts. An account and distribution which should disregard this charge would scatter the property into different hands, and thus endanger the rights of creditors, and render it more difficult to enforce them; it would increase litigation; it would take from the possession of William junior's representatives four fifths of the property, without rendering it safe, as against the creditors of William senior, for them to part with that possession; and it would give to each of the children one fifth of the whole property, when their only equitable claim is to one fifth of what may remain after payment of all just debts.

It is urged that it does not appear there are any just debts due from the estate of William senior. But the bill shows that for many years before his death he was greatly embarrassed by debts; that this property was originally placed in the name of his son, "for the sole and only purpose of enabling him to carry on and conduct the business of said establishment, and to publish the said Herald without being subjected to legal process, arising from any liabilities to which he then was, or might become liable, as former partner of the greatly insolvent firm of Jones & Simons;" and no reason, other than his apprehension of legal process by creditors, is suggested, why the property was continued and the business transacted in the name of William Simons junior, down to the time of his father's decease. Upon these allegations in the bill, it is impossi-

ble for the court to assume there are no creditors to be protected. It is true no one of them has taken administration. But this may be because they are ignorant that William senior owned any property, or because they have become satisfied that this property justly belonged to William junior, and that any attempt to disturb his title would be fruitless, or for other reasons, which do not appear. The court cannot, in their absence, act as if they had no rights, or, in face of every reasonable presumption, presume they do not exist.

The complainants' counsel also relies on an agreement, made on the first day of February, 1849, between Aaron Simons and Charles F. Tillinghast, as the administrator of William Simons junior, as dispensing with the necessity of making an administrator of William senior a party. But I find nothing in that agreement which can affect the title of any party to this property. Its purpose was to provide temporarily for the custody and management of the property until the title could be settled, and not to create any new title, or waive any objection to the claims asserted by either party, and I find no language in the instrument inconsistent with this leading purpose, or which can properly aid the complainants in making out their case. There is, however, one mode in which the complainants may place themselves in a position to obtain whatever may be their just rights in this property. Mr. Allen, in right of his wife, can apply for, and I presume obtain, letters of administration on the estate of William Simons senior, and, by a supplemental bill, bring before the court this new title, with proper prayers for relief. I am disposed to grant leave to file such supplemental bill, because I think it just that the expense already incurred in this cause should not be fruitless, and because the evidence already in the cause has been taken by and between the same persons, and upon the same contested facts and in support and denial of the same titles which will be then before the court. But to prevent misapprehension it is necessary for me to state, that I have not thought it proper, in the absence of a necessary party, to examine the merits of this controversy, nor to ascertain whether, if the property was held by William Simons junior, upon a secret trust, it was a trust created for the purpose of defrauding or delaying creditors. In determining whether to take administration, and file a supplemental bill, the complainants must be governed by their own views, and those of their legal advisers, and not by the assumption that the court has formed any opinion respecting the trust asserted in the bill.