[No. 11346. Department Two.— January 25, 1888.]

## IN THE MATTER OF THE ESTATE OF L. RADOVICH, DECEASED.

ESTATE OF DECEDENT — CONVERSION BY EXECUTOR — SALE WITHOUT ORDER OF COURT. — An executor who sells or otherwise disposes of personal property belonging to the estate which he believes to be worthless, without an order of court authorizing him to do so, is guilty of conversion, and is liable to the estate for its value, with legal interest.

ID. — RESIGNATION OF EXECUTOR — ACCOUNTING. — An executor, after he has resigned his trust, may be compelled to account with the estate for the value of personal property converted by him, which he had neglected to include in his prior accounts.

ID. — SALE BY EXECUTOR — EXCESS OVER APPRAISEMENT. — An executor who sells property belonging to the estate for a price in excess of the value at which it was appraised must account to the estate for the excess.

APPEAL — ORDER MADE AT INSTANCE OF APPELLANT. — An appeal from an order made at the request of the appellant, and which could not operate to his prejudice, will not be considered.

APPEAL from an order of the Superior Court of the city and county of San Francisco settling the accounts of an executor, and from an order modifying such order.

The facts are stated in the opinion.

*A. D. Splivalo*, for Appellant.

*A. Comte, Jr.*, for Respondent.

BELCHER, C. C.—In 1870, S. Martinovich was duly appointed executor of the last will and testament of L. Radovich, deceased, and he continued to act as such executor until August, 1882. Among the assets of the estate which came into his possession as executor was a certificate for five shares of the capital stock of the San Francisco and Oakland Railroad Company. This stock was mentioned in the inventory, and was appraised at $250. Martinovich resigned his place as executor in 1882, and J. L. Radovich was appointed administrator of the estate with the will annexed.

Martinovich never obtained any order for the sale or disposition of the stock, and never turned the certificate over to his successor. Subsequently, in March, 1885, Radovich, as administrator, obtained an order from the court requiring Martinovich to appear and render an account under oath of the five shares of stock which he had received and held as executor.

To this order Martinovich answered, denying that, as executor or otherwise, he ever received the five shares of stock referred to, and alleging that at the time of L. Radovich's death, the stock was, and ever since had continued to be, worthlesss, and of no value whatever.

A hearing was had before the court, at which Martinovich appeared and testified that he was executor of the last will of L. Radovich, deceased, and that, prior to November 28, 1873, as such executor he had the control and possession of the said five shares of stock as a part of the

assets of the estate, and "that he had indorsed the stock as such executor, and had delivered the same to A. D. Splivalo, his attorney and agent, to sell it for whatever he could, and that witness, as such executor, had filed accounts, but had never accounted for said stock, or the proceeds of sale thereof, and that he had been allowed by the court in his accounts and had received from the estate all his commissions, disbursements, and charges, and claims of all kinds, including attorney's fees in matter of said estate, and that nowhere and in no manner had he accounted for said shares of stock, but had omitted all mention thereof in his accounts, as he did not consider them of any value; that he had never applied to the court for authority to sell the stock, and that his indorsement of the same and the delivery of the same to said Splivalo was without order from court."

Splivalo was called as a witness, and testified "that he had been attorney for the estate of L. Radovich, deceased, . . . . and that said Martinovich had indorsed the stock as executor, and told him to sell it for what he could get and keep it for his services; that the stock was not indorsed by any other person than the said Martinovich; that the stock was considered of no value whatever, but that witness sold it for $450 some time prior to November 28, 1873; that $450 was not its value, although he got that sum for it; that the stock had no value; that he received the stock as part compensation for his services in said estate; and that if it were not credited in the accounts, it was through forgetfulness."

The court found, among other things, that the five shares of stock were indorsed and sold without any order of court, and were transferred to the purchaser thereof on the books of the corporation on the twenty-eighth day of November, 1873; that the stock was sold for $450, and that that sum was its market value at the time of sale; that neither the stock nor the proceeds of the sale thereof were ever accounted for by Martinovich prior to the filing

of his account in May, 1885, and that there was no good or any sufficient cause for his delay in accounting for the same.

Thereupon an order was made and entered, settling the account at $450, with legal interest thereon from November 28, 1873, in the aggregate, $828.92, and requiring Martinovich forthwith to pay the last-named sum to the administrator of the estate.

Subsequently, on motion of counsel for Martinovich, an order was made modifying the last-named order in certain unimportant particulars, and thereupon Martinovich appealed from both orders.

1. We fail to see that the court erred in making the first order complained of. As executor, Martinovich had no right to sell or otherwise dispose of the stock without an order of court authorizing him to do so. When, therefore, without any such order he caused the stock to be sold, he in legal effect converted it to his own use, and became responsible for its value, with legal interest thereon.

The claim that the court had no jurisdiction to make the order because Martinovich resigned his trust as executor in 1882, and then settled his accounts and was discharged, is not tenable, for two reasons: 1. The code provides that "when the authority of an executor or administrator ceases, or is revoked for any reason, he may be cited to account before the court at the instance of the person succeeding to the administration of the same estate," etc. (Code Civ. Proc., sec. 1629); and 2. It affirmatively appears that he never accounted for or was discharged from the liability in question.

So the claim that the stock was considered worthless, and the appellant therefore rightfully turned it over to Splivalo, attorney for the estate, is equally untenable.

The executor has no right to give away the assets of the estate, even though he may consider them worthless, and the attorney has no right to receive such a gift from

the executor's hands. Both parties knew, or should have known, such to be the law when the transfer was made.

So, too, the claim that appellant, if chargeable at all, should have been charged with only $250, the appraised value of the stock, is wholly without merit. The code makes the executor chargeable with the whole of the estate at the appraised value, and with all the interest, profit, and income thereof, and it requires him to account for the excess when he sells any part of the estate for more than the appraisement. (Code Civ. Proc., secs. 1613, 1614.) As the stock was actually sold for $450, the appellant was properly chargeable with that sum, with interest thereon.

2. The appeal from the second order cannot be considered, for the reason: 1. It was made at the instance of appellant; and 2. It was made to promote his interests, and could not possibly operate to his prejudice.

We conclude, therefore, that both of the orders appealed from should be affirmed.

HAYNE, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the orders are affirmed.

Hearing in Bank denied.