#### IN THE

# SURROGATES' COURTS

#### OF THE

## STATE OF NEW YORK.

---

NEW YORK COUNTY.—HON. RASTUS S. RANSOM,
SURROGATE.—November, 1888.

### MATTER OF DELAPLAINE.

*In the matter of the judicial settlement of the account
of JAMES CRUIKSHANK and TALBOT W. CHAMBERS,
as executors of the will of JOHN F. DELAPLAINE,
deceased.*

While executors should endeavor earnestly to act in harmony in all mat-
ters for the good of the estate, united, if possible, in policy, and acting
consistently with the wishes of the deceased, neither is required to sub-
mit to the dictation of the other nor to surrender his positions in re-
spect to his administrative duties. He is not required to merge himself
or his judgment in the office or judgment of his colleague.

Qualifying executors honestly differing as to the conduct of the affairs of
the estate may each separately employ counsel to render to them pro-
fessional services on substantially parallel lines, but quite independent
of each other, and each executor is entitled to be reimbursed for a
reasonable compensation paid by him to his counsel.

MOTION to confirm the report of a referee on an
accounting of testamentary trustees.

VOL. I.—1

The testator, John F. Delaplaine, died in the city of New York the 14th day of February, 1888, leaving a last will and testament bearing date the 11th of December, 1866, and a codicil bearing date the 20th day of January, 1869.

The will and codicil were duly admitted to probate by the Surrogate of the county of New York the 3d of June, 1886.

By his will he directed that his residuary estate, both real and personal, exceeding $500,000 in value, should be applied to the establishment of an institute to be maintained in the city of New York, to be named the Delaplaine Institute for the Relief of the Friendless; and the will further provided that in case the provisions for this institute should prove invalid, that the entire residuary estate should be divided between various specified charitable and religious organizations.

Exceptions were filed to the account of the executor, James Cruikshank, by the American Home Missionary Society, the American Board of Commissioners for Foreign Missions, and the American Missionary Association, as to the extent, value or necessity of the services of the attorneys for that executor.

The matter was referred, and the referee, having reported that but one counsel fee for all the legal services rendered to the executors could be properly allowed, Messrs. Billings & Cardozo, on behalf of the executor, James B. Cruikshank, filed exceptions to the report of the referee.

The reference on the accounting also involved some other matters not necessary to be here noticed.

Further facts appear in the opinion of the Surrogate.

JAMES McG. SMITH, *for American Missionary Association, American Home Missionary Society and the American Board of Commissioners for Foreign Missions.*

BILLINGS & CARDOZO (MICHAEL H. CARDOZO, *of counsel*), *for the executor, James Cruikshank.*

I. As to the principles which should govern in determining the compensation of counsel, see People v. Bond Street Savings Bank, 10 *Abb. N. C.* 15, and cases there cited.

The various elements which the court should take into consideration are well analyzed and stated by the referee in that case, who says :

" 1. As to the litigation or business itself."

" (*a.*) The amount involved : Kentucky Bank v. Combs, 7 *Pa. St.* 543 ; Harland v. Lilienthal, 53 *N. Y.* 438, 441 ; Garfield v. Kirk, 65 *Barb.* 464, 467, 468 ; Betts v. Betts, 4 *Abb. N. C.* 317, 443."

" (*b.*) The interests involved (meaning the relative importance to the clients of success or failure) : See cases above cited."

" (*c.*) The questions of law involved ; their intricacy, difficulty or novelty : Betts v. Betts, *supra ;* opinions of SCUDDER, Referee, and VAN VORST, J. ; 4 *Abb. N. C.* 317, 441, 444 ; Pulling Law of Attorneys, ch. 8, part 2, § 2 ; Weeks on Attorneys, 568, and cases cited."

" (*d.*) The labor and responsibility involved, both in the executive and practical management of the matter and in the treatment of the legal cases : See cases above cited, and, also,"

" (*e.*) The result of this service—whether or not the litigation was successful or the transaction was carried through successfully in the manner designed."

" 2. As to the lawyer."

" (*a.*) The learning required and the scope and thoroughness of his learning."

" (*b.*) The labor performed by him, his tact and judiciousness of movement, his perfect integrity and assiduity in the interest of his client."

The amount involved in that matter was $115,000 ; the referee allowed counsel $18,250 in addition to $10,500 already paid, and the court increased the amount allowed to $22,646, the amount claimed by counsel before the referee.

II. The referee in the present case proceeded upon the erroneous theory that the attorney for one executor where another executor has also an attorney, can only be allowed one half of the value of his reasonable fee, no matter how meritorious may have been his services.

THE SURROGATE.—The only question debatable in this proceeding arises on the exceptions to the referee's disposition of the claims made by the executors for the allowance to respective counsel as compensation for professional services rendered by them on substantially parallel lines, but quite independent of each other, under the separate employment of the two qualifying executors. I do not entirely agree with the learned referee on this point. In all other respects I confirm his views and his report, for the reasons given in his excellent opinion.

I do not, however, feel willing to admit that, although generally speaking, two or more executors are in law as one person, they are so to be regarded in all the contingencies that may arise in the course of their administration. They are the chosen, trusted agents and personal representatives of the dead. They each have a most important and solemn duty to perform ; and, whilst they should strain earnestly to act in all matters in harmony for the good of the estate, uniting, if possible, in policy, and act on a line consistent with the wishes of the deceased, neither is required to submit to the dictation of the other, nor to surrender his positions in respect to his administrative duties. He is not required to merge himself or his judgment in the office or judgment of his colleague. The fact that the deceased, under our scheme of testamentary disposition of property, has lawfully appointed two or more executors to carry out his wishes and will, furnishes the only reason we need look for to sustain this view of their rights and duties. The deceased person must be held to have contemplated, not only the possibility of difference of opinion amongst his executors, but the extreme probability that such differences would arise. In such an event it surely cannot be held that one shall submit to the other—that he shall subordinate to the other his own honest conception of a proper line of policy and official duty. There can be no doubt either but that it is the plain duty of the executors to honestly strain after harmony in all respects affecting the welfare of the estate. On such appearing to be the history of their official acts, there can be no difficulty in

disposing of any question of the expense of their administration.

In this case one executor qualified first and went about his official duty promptly and properly. Every act on his part was the result of a clear appreciation of his office. He was under no moral or legal obligation to look up any one or all of the persons named in the will as co-executors and invite them or notify them to qualify. And, on the other hand, the fact of his first qualifying gave him no right in office in the least superior to them when they should qualify. After qualification they would stand equal before the law and in the precise attitude that the deceased wished and expected when he named them in the will. And, except for misconduct, they could not be removed nor their powers as set out in their letters of appointment, the will, be limited or restricted. If in the course of an honest effort on their part, individually, to carry out the wishes and will of the deceased, they differ in judgment, and thereby little or much additional expense should be incurred, no one should feel surprised. Such a contingency must almost surely arise in the administration of the affairs of any large estate. So also if, as in this case, the executors were compelled to seek the aid of the court for safe guidance of their judgment, discretion and power in procuring a construction of the will, their acts in that regard are to be those of careful, prudent men, acting honestly on a line of duty dependent upon individual judgment, not upon a line marked out by one of their number.

In considering this case we should inquire whether the executor last qualifying has acted in harmony with

those principles ?    I fail to discover anywhere, in the facts or in the law, anything to the contrary.    The simple avoirdupois of this case is enormous, and only after much labor have I possessed myself of all its details essential for the decision of the question involved.

The learned referee took the conservative view that but one counsel fee for all the legal services rendered to these executors in aiding them in the discharge of their important duties can be properly allowed as a just and reasonable expense of administration.    In this respect only, as already remarked, I feel compelled to disagree with him.    The result of his decision is to deprive one executor of his rights at the expense of the other.    To make the application more personal :  The executor first qualifying, in the proper discharge of his duty, employed careful and able attorneys to assist and advise him in his management of this large estate.    Such employment was his contract with these attorneys and one which he had the right to make, and one which can be enforced by them against him, and not against the estate.    There will be no difference of opinion about this proposition.

Pursuant to this contract these attorneys have labored long and with that measure of ability to be expected of gentlemen deservedly enjoying their high reputation for learning and ability, and for integrity and fairness in their professional and personal relations.    Such compensation as they have fairly earned under this contract must be allowed their employer, the executor, as an item of his just and reasonable expense of administration.    It would not be right morally or legally, to disallow one dollar of their

claimed compensation, except on satisfactory evidence that they did not earn so much. The referee very properly finds as a fact that the amount claimed by their client, the executor, in this behalf is just and fair. Because the other executor, in the independent exercise of his own judgment, was unable to accept these gentlemen as his attorneys, and selected another, in whom he placed his trust and confidence, upon whose skill and learning he relied, and who, as the facts abundantly show and the referee finds, was eminently fitted in every way for his work, furnishes no valid reason, in my opinion, for practically setting aside the contract made by the first qualifying executor with the attorneys employed by him, and making a new contract for him and them. The bald question here is whether Dr. Chambers was compelled to adopt the policy, the acts, and the agents of Mr. Cruikshank? Was he obliged to follow in the way pursued by Mr. Cruikshank? Clearly, no. As well might Dr. Chambers now insist that Mr. Cruikshank should have adopted his policy, his acts and his agent. The intention and purpose of the statute is that the Surrogate shall allow executors and administrators only such expense of their administration as he finds from the evidence in the given case is just and reasonable. Each case necessarily depends entirely upon the facts and circumstances therein. Certain well-worn rules of decision and sense must of course be heeded by him; but one case cannot, in the nature of things, be an absolute precedent for another. In this case, the will was so unintelligible and so ambiguous that a suit in the Supreme Court was necessary to construe it.

Mr. Cruikshank qualified and went to work at once, as he should. Dr. Chambers, another executor, thereafter qualified and went about his business in a careful, prudent manner. Both executors were entitled to the assistance of good lawyers ; they employed them and promised, under the obligations of a lawful contract, to pay them proper compensation ; and such compensation has been ascertained, and they have been paid. The sums so paid in this case appear to have been fully earned, and whether really the services of either or both the attorneys for the respective executors were or were not beneficial to the estate does not signify on the question under consideration. That inquiry has been made by the referee, and on ample proof he has found the value of the services of both attorneys, and such finding settles forever, in my view, any possible controversy over the character of the services. I have no difficulty in holding in this case that both these executors have acted honestly and intelligently, and always within the limits of law, and that they are each entitled to be reimbursed out of this estate for the sums paid by them respectively to their respective attorneys. And for the figures, I depend on the findings of the referee, my purpose being to confirm his report in all respects, except as to his legal conclusion that, in this case, there should be one counsel fee allowed to these accounting parties. I have given patient attention to the voluminous briefs filed by all parties interested in this estate, and have examined all the authorities cited. I am satisfied that as nearly as possible in the disposition of human affairs by human kind, justice has been done by me to all concerned.