HUBBARD et al. v. URTON et al.

(Circuit Court, D. Nevada. March 18, 1895.)

No. 581.

1. BILL FOR ACCOUNTING—ALLEGATION OF TITLE—DEMURRER.
  On general demurrer to a bill for an accounting by an administrator for assets converted by him, and unadministered upon, an allegation that complainants "comprise all the heirs and next of kin" of deceased, though stating a legal conclusion, is a sufficient averment of complainants' title, where the decree of distribution in the probate proceedings, reciting the pedigree and relationship of each of the complainants, is set out in the bill.

2. DESCENT AND DISTRIBUTION—ACTION BY DISTRIBUTEES—NECESSITY FOR ADMINISTRATION.
  After final settlement of an estate, and discharge of the administrator, the heirs and distributees may sue in equity to recover personal property unadministered upon, of which their ancestor was defrauded, the act "regulating the settlement of the estates of deceased persons" (Gen. St. Nev. 1885, c. 19) not providing that heirs and distributees shall acquire title only through administration.

3. EQUITY PLEADING—PRAYER IN THE ALTERNATIVE.
  In a suit to recover property procured by fraud, the prayer of the bill may be in the alternative that complainant recover the specific property or its value.

Bill in equity by B. P. Hubbard and others against W. J. Urton and others to recover mining stock, and for further relief. The case was heard on demurrer to the bill.

Booth, Lee & Gray and A. C. Ellis, for complainants.
J. W. Dorsey, for defendants.

HAWLEY, District Judge. This is a suit in equity, brought by the heirs and next of kin of John Hubbard, deceased, to recover certain shares of mining stock, or its value, and to compel an accounting of the proceeds of a certain mine, and for other relief. The bill is quite lengthy. A brief reference to some of its essential features will be sufficient to give an understanding of the points raised by the demurrer. It is alleged that there had been an administration of the estate of John Hubbard, deceased; that defendant Urton was the appointed administrator thereof; that there had been a settlement and distribution of the property of the estate that had been brought to the attention of the probate court; that the administrator had been discharged; that the debts of the estate had been paid; that by the fraud of said Urton, and his conspiracy with the other defendants, certain

personal property, described in the bill, including mining stock and money, dividends upon the mining stock, and money derived from the sale of ores, etc., had not been administered upon, but, on the contrary, had been fraudulently appropriated by the defendants, and converted to their own use. Complainants allege facts to establish the relation of trustees upon the defendants, and to compel them to account for all the property which had not been accounted for in the probate proceedings. They do not seek to disturb any of the proceedings had in the probate court. To this bill the defendants have interposed a demurrer, upon the ground that complainants have not stated such a case as entitles them to any discovery or relief touching the matters alleged in the bill; that the bill does not state facts sufficient to constitute any cause of action against defendants, or either of them, "nor does it set forth any matter or thing entitling said complainants, or any one of them, to any relief, equitable or otherwise, against these defendants, or any one of them"; that the bill "does not show that said complainants or any one of them have or has any interest in, or are entitled to complain of, or are the proper parties to maintain, this suit because of any of the matters or grievances alleged therein."

Is this demurrer well taken? It is first sought to be maintained upon the ground that the averment in the bill that "your orators comprise all of the heirs and next of kin of the said John Hubbard, deceased," states a mere conclusion of law, and is wholly insufficient to establish the right of complainants to bring this suit. This objection, if deemed to be valid, could be easily remedied by an amendment. It is undoubtedly true that suits of this character, as well as others, must be brought by the real parties in interest, and should be based upon the rights of the complainants as they existed at the time of the commencement of the suit. As a general rule, where a suit is brought by a party claiming title to property by reason of his heirship, he ought specifically to allege his particular kinship to the person through whom he claims. He ought to set out his relationship in full, and aver that there are no others nearer of kin than himself, so that the court, from the facts stated, might be able to say whether he is, under the law, entitled to the property as such heir. But in the present case there are certain other averments in the bill which ought to be considered in this connection with the one complained of. For instance, the decree of distribution of the property of the estate in the probate proceedings is set forth in full in complainants' bill, and the pedigree and relationship of each of the complainants herein to the deceased is therein minutely set forth, and the question of their kinship was therein adjudicated. This should be considered sufficient as against a general demurrer. It would accomplish no good end to require a repetition on this point. The ultimate fact is admitted that complainants comprise "all of the heirs and next of kin," and it is wholly immaterial to defendants whether they are sisters or brothers or cousins or aunts of the deceased. The particular relationship is matter of proof, and

the final decree in the probate court sufficiently advises defendants in regard thereto. Considering all the averments in the bill I am of opinion that it substantially complies with the requirements of the general rule that every bill in equity must clearly show, upon its face, that the complainant is entitled to the relief demanded, and that he has such an interest in the subject-matter as clothes him with the right to initiate and maintain a suit concerning it. 1 Daniell, Ch. Pl. & Prac. 314; Story, Eq. Pl. § 23.

The next proposition relied upon in support of the demurrer is far-reaching. It goes to the merits of the bill. If tenable, the bill must be dismissed. The contention is that the complainants, as heirs of the estate of John Hubbard, deceased, have no such title to the personal property set forth in the bill as will enable them to maintain this suit; that the only authority which they can legally invoke against the wrongs and grievances complained of must come through the channel of probate proceedings in the regular course of administration by the appointment of a new administrator. The argument in behalf of this contention was directed principally to the point that, under the statutes of the state of Nevada, no title vests in the next of kin until the estate has been regularly administered upon; that then they only take the surplus remaining after payment of debts and expenses of administration under the statute of descents and distribution; that until then the heirs or next of kin, although entitled to a distributive share, have no right to the possession of either the whole or any specific portion of the personal property; that, when a man dies intestate, the title of his personal property remains in abeyance until administration is granted upon his estate, and then vests in the administrator as of the time of his death. These general principles have been repeatedly announced under a great variety of circumstances in many of the state courts. A vast number of authorities have been cited by defendants' counsel. The following, among others, have been examined: Bush v. Lindsey, 44 Cal. 125; McCrea v. Haraszthy, 51 Cal. 147; Auguisola v. Arnaz, Id. 435; Chaquette v. Ortet, 60 Cal. 598; Dean v. Superior Court, 63 Cal. 474; Estate of Radovich, 74 Cal. 536, 16 Pac. 321; Cullen v. O'Hara, 4 Mich. 132, 138; Morton v. Preston, 18 Mich. 61, 71; Miller v. Clark, 56 Mich. 337, 23 N. W. 35; Jenkins v. Freyer, 4 Paige, 47; Woodin v. Bayley, 13 Wend. 453; Beecher v. Crouse, 19 Wend. 306; Palmer v. Green, 63 Hun, 6, 17 N. Y. Supp. 441; Weeks v. Jewett, 45 N. H. 541; Hagthorp v. Hook, 1 Gill & J. 271, 277; People v. Brooks, 123 Ill. 249, 14 N. E. 39; Collamer v. Langdon, 29 Vt. 39; Taft v. Stevens, 3 Gray, 504; Boylston v. Carver, 4 Mass. 608; Smith v. Dyer, 16 Mass. 18; Weld v. McClure, 9 Watts, 495; Little v. Walton, 23 Pa. St. 166; Bufford v. Holliman, 10 Tex. 560; State v. Britton, 11 Ired. 110; Lansdell v. Winstead, 76 N. C. 366; Sneed v. Hooper, 5 Am. Dec. 691; Bungard v. Miller (Pa. Sup.) 8 Atl. 209; Hayes v. Hayes' Ex'x (N. J. Ch.) 17 Atl. 634; Varner v. Johnston (N. C.) 17 S. E. 483; Crane v. Warfield (Ark.) 15 S. W. 609; Richardson v. Vaughn (Tex. Civ. App.) 22 S. W. 1112; Hall v. Cowles' Estate (Colo. Sup.) 25 Pac.

705; Weyer v. Watt (Ohio Sup.) 28 N. E. 670; Pritchard v. Norwood (Mass.) 30 N. E. 80; Allen v. Simons, 1 Fed. Cas. 514. It would serve no useful purpose to specifically review these authorities. In several of them suits were brought by the heirs to recover property belonging to the estate pending the regular course of administration. Others were instituted before there had been any administration at all. In some of them the principles announced are based upon special provisions of the statute and the particular practice of the courts wherein the actions were brought. It may be conceded, for the purposes of this opinion, that the principles announced therein are correct as applied to the particular facts of each case. But the question here is whether the general principles therein stated, by analogy or otherwise, have any controlling application to the facts of this case, which are in many material respects essentially different from the cases cited.

Can the heirs of the deceased bring and maintain a suit in equity to compel the individual who was the administrator, and other persons who fraudulently conspired with him, to account for the personal property belonging to the estate which they have fraudulently converted to their own use, after due administration of the estate, the payment of the debts of the deceased and the expenses of administration, the discharge of the administrator, and distribution of the property brought before the court, without having another administration of the estate? Admitting that another administrator might be appointed, and that he could maintain a suit in his name to obtain the relief here asked for, have complainants no other remedy? There is no substantial reason why complainants should be required to go through the circumlocution of another administration, and contest for their rights through an administrator, and this court ought not to require it to be done, unless the provisions of the statute of Nevada imperatively demand it. Why should complainants be compelled to travel over such a circuitous route if the law permits them to take a more direct road? There is no pretense that the defendants will be subjected to any peculiar hardship or injustice if the heirs are allowed to maintain this suit in their own name, instead of by an administrator. Do the provisions of the statute of Nevada require that an administrator should be appointed, under facts similar to the case at bar?

Section 2783, Gen. St. Nev., provides that:

"The executor or administrator shall have a right to the possession of all the real as well as personal estate of the deceased, and may receive the rents and profits of the real estate until the estate shall be settled, or until delivered over by order of the probate court, to the heirs or devisees."

Section 2949 provides that:

"The final settlement of an estate shall not prevent a subsequent issuance of letters testamentary, or of administration with the will annexed, should other property of the estate be discovered, or should it become necessary or proper, from any cause, that letters should be again issued."

If confined to a strict interpretation of the phraseology of these sections, it must be admitted that it gives some support to the con-

clusions contended for by defendants. But it is the duty of the court to look at all the provisions of the act "to regulate the settlement of the estates of deceased persons," and determine therefrom its object, scope, and intent. The object of the act is primarily for the benefit and protection of the creditors of the estate, and it provides the methods by which an administration shall be had, and defines the steps that shall be taken to carry out and complete the administration of the estate. It regulates and defines the powers and duties of the executors and administrators, provides how and in what cases they may be cited to appear and account before the court, provides for their discharge and for the final settlement and distribution, etc. The object of the sections heretofore quoted was to enable the administrator or executor to comply with the other provisions of the statute as to the payment of the debts and expenses of the administration. After these and other provisions are complied with, the statute (section 2981) declares that all the real and personal estate of an intestate descends to his heirs. The duty of an administrator is to take charge of the estate for the purpose of settling the claims, and, when they have been satisfied, it is his duty to pass it over to the heir, whose absolute property it then becomes. The act, in its entirety, "regulates the proceeding of executors and administrators as such, and, acting in that capacity alone, the validity of their acts depends upon a compliance with its provisions." Hunt v. Hunt, 11 Nev. 442. In Gossage v. Mining Co., 14 Nev. 153, the scope, intent, and purpose of the act is illustrated and explained on lines similar to those here suggested, and several cases are there cited where the heirs and next of kin were permitted to institute actions of law independent of the statutory proceedings relating to the administration of estates.

Admitting it to be true as a general proposition that the probate courts have jurisdiction of the estates of deceased persons and of matters pertaining thereto, such as the settlement of the accounts of executors and administrators, and the distribution of the property among the heirs and legatees, and that in these respects such courts can only proceed in the manner prescribed by the statute, yet there are many proceedings which relate to the estates of deceased persons—even during the course of administration—of which the probate courts have no jurisdiction. Judicial determinations as to the right of possession to real estate between administrators and the heirs or other persons and the title to personal property furnish an example. Many other instances might readily be mentioned. None are more imperative than in cases of an alleged trust in real estate or personal property. Such cases are within the well-established jurisdiction of courts of equity. In Haverstick v. Trudel, 51 Cal. 433, the heirs at law of the deceased were permitted to maintain a suit in equity against the administrator of the estate to establish a trust as to certain real property which the administrator was attempting to convert to his own use, and to compel him to render an account of all the property received by him, both real and personal. Complainants cite

the following among other cases which shed more or less light in favor of their right to maintain this suit: Moseley v. Lane, 27 Ala. 62; Green's Adm'x v. Creighton, 23 How. 90, 104; Beall v. New Mexico, 16 Wall. 535, 541; U. S. v. Walker, 109 U. S. 258, 261 et seq., 3 Sup. Ct. 277.

There is nothing in any of the provisions of the statute of Nevada which forbids the heirs, in a case like this, from bringing a suit in their own names. The present case presents many strong reasons in support of the right of the heirs to maintain this suit. It is alleged that John Hubbard, in his lifetime, was of feeble mind and body, brought about by the excessive use of alcoholic stimulants, and that for some time previous to his death he was incapable of transacting any business; that he was possessed of mining property of great value; that the defendants, well knowing his condition, took advantage thereof, and caused him to execute deeds for said property, without any consideration, and fraudulently deprived him of his estate, etc. In the light of all the averments, too lengthy to recite, it is manifest that it would work a great hardship and injustice to compel the heirs to go to the expense and delay of another administration of the estate. They are the real and only parties in interest. They alone will be benefited or injured, as the case may be, by the result of the suit. There are no debts to be paid; no creditors whose rights will be affected. No provision of the statute will be violated; no rule of the state court disturbed. The defendants will not be injured. They are not in a position to complain of the manner in which they are brought into court. They cannot take advantage of their own wrong. The appointment of another administrator would not accomplish any useful end. Moreover, the right of the heirs to bring a suit of this character has been recognized in the United States circuit courts, and the right to have relief in a court of equity is sanctioned and approved by the supreme court of the United States.

In Stanley v. Mather, 31 Fed. 860, a suit was brought by the heirs to foreclose certain mortgages belonging to the estate. Letters of administration had previously been granted, and the administrators proceeded to administer upon the personal estate of the decedent under the direction of the court. The claims against the estate had been paid. An order of distribution of the personal property had been made, but the administrator had not been finally discharged. The notes and mortgage sought to be foreclosed were never brought to the attention of the probate court, for the reason that they were deemed to be of but little value; and, after the decree of the court for the distribution of the property reported by the administrators, the administrators delivered these notes and mortgages to the heirs, without any direction or order of the court. It was there, as here, claimed, upon demurrer to the bill, that the notes and mortgages were part of the personal estate of the deceased; that they were never delivered to the claimants by the administrators under the direction of the probate court, and that no person except the personal representatives of the estate could sue to foreclose the mortgage, The sole question presented

was whether the complainants (who were the heirs) could maintain the suit. With reference to this question, Gresham, J., in overruling the demurrer, said:

"An administrator takes the personal estate of the decedent in trust—First, for the creditors; and, next, for the heirs. He is a mere trustee, with no beneficial interest in the property upon which he is appointed to administer. After all debts and expenses of administration are paid, any surplus remaining in his hands goes to the heirs. It is admitted in this case that all creditors and all expenses of administration have been paid, and that the complainants are the sole heirs and distributees. In fact, it was judicially determined by the probate court * * * that the three complainants were the sole children and heirs of the decedent. The only thing that a personal representative could now do would be to obtain an order from the probate court to deliver the notes and mortgages to the complainants, or collect the notes and pay over the money. The law will not require the heirs, who are the equitable owners of the notes and mortgage, to deliver them to Hoyt, the remaining administrator, if he is such, and, if he is not, to go to the trouble and expense of having another personal representative appointed in order that a suit of foreclosure may be maintained. It does not follow, because the administrator is the proper party to collect the debts due a decedent, and pay creditors, and for that purpose bring suits, that under no circumstances can the heirs at law maintain a suit to collect a debt which has not been collected by the personal representative. Having paid all creditors and all expenses of administration, the administrators delivered the notes and mortgages to the complainants, the only persons entitled to them in equity; and there is no reason why their possession should now be disturbed."

Defendants insist that there is a distinction between that case and this, because in that case the heirs had obtained possession of the personal property from the administrators. But possession was not obtained by virtue of the probate proceedings in due course of administration by an order of the probate court. This was the point urged and relied upon in that case in support of the demurrer. The opinion of the court is not based upon the ground of the possession of the property. That is only incidentally referred to as a fact in the case. The entire reasoning of the court is based upon the broad ground of the right of the heirs to maintain the suit, without having the title to the property come to them under a decree of the probate court.

In Griffith v. Godey, 113 U. S. 89, 93, 5 Sup. Ct. 383, Mr. Justice Field, in delivering the opinion of the court, said:

"It is well established that a settlement of an administrator's account by the decree of a probate court does not conclude as to property accidentally or fraudulently withheld from the account If the property be omitted by mistake, or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises, and take such action as justice to the heirs of the deceased or to the creditors of the estate may require, even if the probate court might in such case open its decree, and administer upon the omitted property. And a fraudulent concealment of property or a fraudulent disposition of it is a general and always existing ground for the interposition of equity."

Some suggestions were made in the oral argument about this suit having been brought in the alternative to recover the specific property or its value. This cannot be relied upon as an objection to the bill. In Hardin v. Boyd, 113 U. S. 756, 763, 5 Sup. Ct. 771, the court said:

"It is a well-settled rule that the complainant, if not certain as to the specific relief to which he is entitled, may frame his prayer in the alternative, so that, if one kind of relief is denied, another may be granted; the relief of each kind being consistent with the case made by the bill."

The demurrer is overruled.