B. F. HUDSON *et al.* v. NORMAN BARRATT, *as Administrator, etc., et al.*

No. 11,591. ( 61 Pac. 737.)

1. ACTION ON BOND—*Parties.* The real parties in interest may be substituted as plaintiffs in an action previously brought in the name of the state on an executor's bond.

2. PRACTICE, PROBATE COURT—*Jurisdiction.* The probate court has the power, and it is its duty, to require a full and final accounting and to make a settlement with an executor who has resigned, been removed, or whose letters have been revoked, and to order him to deliver the personal effects and assets of the estate to his successor.

62 137
s62 259
f62 264

62 137
d67 299

62 137
e80 553

3. EXECUTOR'S BOND—*Action against Sureties—Conditions Precedent.* Where the estate of a deceased person is in process of settlement in the probate court, and an accounting has not been had with a former executor therein, and there has been no refusal by such executor to make a full and final accounting, and where a full settlement may be required and an adequate remedy had in that court, no occasion exists to invoke the equitable jurisdiction of the district court, or for interference by that court with the setttlement in the probate court; and in such case an action cannot be maintained on the executor's bond until an accounting has been had in the proper tribunal, a liability ascertained, and an opportunity afforded the former executor to discharge it.

Error from Atchison district court ; W. T. BLAND, judge. Opinion filed July 7, 1900. Reversed.

*B. F. Hudson, C. D. Walker*, and *J. L. Berry*, for plaintiffs in error.

*W. W. & W. F. Guthrie*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : Susan Grimes died testate February 6, 1890. The will was at once probated, and B. F. Hudson, who had been designated in the will as executor, was granted letters testamentary. He gave bond in the sum of $120,000 and entered upon the discharge of his duties. On May 3, 1900, some of the heirs instituted an action to contest the will, and it was adjudged invalid by the district court July 2, 1891. Proceedings in error were begun in this court by the executor on July 13, 1891, when an order was made staying the execution of the judgment of the district court and all proceedings in the case in that court, and later the order was modified so that the executor might proceed to preserve and protect the property of the estate, but forbidding any further distribution of the same until the decision of the merits

in the supreme court. On December 7, 1895, the supreme court affirmed the judgment of the district court. (*Hudson v. Hughan*, 56 Kan. 152, 42 Pac. 701.) On January 18, 1896, the probate court made an order appointing Norman Barratt administrator of the estate, and from this order an appeal was taken to the district court, where it remained pending until April 16, 1897, when the order of appointment was confirmed. He at once qualified and entered upon the discharge of his duties as administrator *de bonis non* of the estate.

The will which was probated and subsequently set aside provided for the disposition of the property by private or public sale, and directed how the proceeds should be distributed. While the executor was in control he collected from the personal estate more than $18,000, and also a considerable sum from the rentals of real estate. On February 11, 1891, he filed his first annual report in the probate court, and continued to administer the estate as executor under the direction of the probate court until the will was set aside. Under the order of the supreme court staying the judgment and proceedings in the district court he continued to act as executor of the estate, with no authority except to preserve and protect the property of the estate until the final decision of the cause in the supreme court. In September, 1891, after the judgment had been rendered setting aside the will, the executor divided the moneys in his hands belonging to the estate among the five non-contesting heirs, but gave nothing to those who were attacking the will.

After the appointment of the administrator, Hudson presented to the probate court what was termed a final settlement of his executorship, and asked to have the same considered and approved by the probate

court.  He tendered in court and to his successor any balance of moneys that might be found due or any property in his possession belonging to the estate, and asked that compensation, expenses and attorney's fees might be allowed. · The non-contesting heirs protested against the acceptance of the report, and the probate court refused to accept the report of Hudson as acting executor of the estate, and decided that it would only recognize and deal with the newly appointed administrator.   Barratt as administrator made a demand on Hudson to turn over the property and funds which had come into his hands as executor, and, no accounting having been had, Hudson refused the demand. An action was then brought in the name of the state against Hudson and his sureties on the bond given by Hudson as executor, and judgment was claimed for the sum of $21,039. ⋅ After the action was instituted, the court, upon the application of the administrator, allowed an amendment of the petition and the substitution of the administrator as plaintiff.   At the trial elaborate findings of fact were made by the court, and the court gave judgment against the defendants for $6758.05, and also directed the delivery to the administrator of ⋅a certain promissory note for $1000, which had been in the possession of the executor.

The defendants complain of the judgment, and the first error assigned is the ruling of the court permitting the amendment of the petition and the substitution of a new plaintiff.   The amendment did not change substantially the cause of action stated in the original petition. Both petitions counted upon the executor's bond, and asked for a recovery of the property and moneys of the estate which the executor had failed to account for or turn over to the administrator upon his de-

1. Action on executor's bond— substitution of parties. ·

mand.   The amended petition was more elaborate, and set up some additional items and claims upon which there was an alleged liability.   No limitation had run in the meantime upon the new matters or added claims of liability, and the defendants were given abundant time for answer and preparation. No error can be predicated on the substitution of the administrator for the state of Kansas as plaintiff. While the bond ran to the state, it was for the benefit of all parties interested in the estate, and, as the administrator was the real party in interest, it was not improper to substitute him as plaintiff.   (*City of Atchison v. Twine*, 9 Kan. 350; *Hanlin v. Baxter*, 20 id. 134; *Comm'rs of Harvey Co. v. Munger*, 24 id. 205; *Paola Town Co. v. Krutz*, 22 id. 725; Gen. Stat. 1897, ch. 95, § 139; Gen. Stat. 1899, § 4389.)

A more serious objection is the bringing of an action against the executor before the probate court, wherein the settlement of the estate was pending, had an accounting with the executor or had

2. Removed executor—jurisdiction of probate court.

determined that there was a liability on the bond.   The probate court has primary and complete jurisdiction over the estates of deceased persons.   Jurisdiction had been acquired by the probate court of Atchison county over the Grimes estate, the settlement of which is still open and undetermined.   That court had probated the will, and from it Hudson had received his credentials as executor. To it he had accounted, and his first annual report had been received and filed.   Under the supervision of that court the estate had been partially administered by Hudson, and his continuance in office and the rightfulness of his possession of the estate while the will case was pending were recognized by this court by the orders of stay.   No final accounting had been had

with Hudson in the probate court, and he had not refused to make such accounting. Why should the probate court surrender or be divested of its jurisdiction over the unsettled estate and of the accounting of the personal representatives which had been appointed? What reasons exist for the interference of the district court or for the arrest of proceedings already commenced in a court of competent jurisdiction? The probate court, as we have seen, has, at least, primary and complete jurisdiction of the unsettled estate, and, even if the district court may be regarded as having concurrent jurisdiction in such matters, the universal rule is that where two courts have equal jurisdiction over a subject-matter of dispute and the parties to it, the one which first obtains jurisdiction is entitled to continue in its exercise to the end. In *Stratton v. McCandless*, 27 Kan. 296, it was said:

"In cases of this kind, where the administrator is still acting and the estate is not settled, and the probate court has complete and ample jurisdiction over the administrator and over the estate, actions in other jurisdictions against the administrator and his sureties on the administrator's bond should not be encouraged."

The present action, like the one in the case cited, "attempts to take a matter which properly and legitimately belongs to the jurisdiction of the probate court, and a matter which ought to be settled and determined in that court, and to place it within a jurisdiction which has no general control over the affairs of the estate." It is true that the jurisdiction of the probate court in respect to estates is not absolutely exclusive, but the cases which may be wrested from the jurisdiction of the probate court and tried in the district court are special and limited.

"The jurisdiction of the district court in such matters is an equitable one, and in its exercise the court will be governed by the rules of equity one of which is that as a general rule it will only take jurisdiction where the plaintiff has no other adequate remedy by ordinary legal proceedings in the tribunal especially provided by statute." (*Carter v. Christie*, 57 Kan. 492, 46 Pac. 949. See, also, *Proctor v. Dicklow*, 57 Kan. 119, 45 Pac. 86.)

Is there no adequate remedy in the probate court? So far as an accounting and settlement with an executor or administrator is concerned, there appears to be no inadequacy of remedy, or necessity for appealing to an exceptional jurisdiction. The statute provides for an accounting in the probate court annually, and at other times, and as often as that court may require, until the final settlement is made. (Gen. Stat. 1897, ch. 107, § 149; Gen. Stat. 1899, § 2837.) The obligation of the bond which the executor gave required an accounting in that tribunal, and the statute makes specific provisions as to how an executor or administrator may be compelled to render his account; and it also provides for a final discharge of the executor after the accounting and settlement which shall exonerate him and his sureties from liability. (Gen. Stat. 1897, ch. 107, §§ 151–153; Gen. Stat. 1899, §§ 2839–2841; Ex. & Adm. Act., §§ 149–151.)

It is argued that the court had no authority to require an accounting by Hudson because he was no longer an executor, and further, that the statute does not provide for an accounting by a removed executor, or that the probate court may order him to turn over the assets of the estate to his successor. Hudson, we think, is to be treated as a removed executor. He held his position and administered the estate under the sanction and supervision of the probate court, but

the final adjudication that the will was invalid necessarily terminated his authority and removed him from the position of executor. The statute provides that in such cases the sales lawfully made in good faith and other lawful acts done by the executor shall remain valid and effectual. (Gen. Stat. 1897, ch. 107, § 26 ; Gen. Stat. 1899, § 2715.) The court had jurisdiction of the estate notwithstanding the removal, and we think it also had jurisdiction of a present or former executor until a final accounting and settlement of the estate was had with him. We find nothing in the statute, or in the theory of the law, excepting a removed executor from the general requirements of the act as to an accounting. The fact that he has been removed does not close his relations with the estate nor take the estate or the property belonging to it out of the jurisdiction of the court. As indicating that the power of the court is not limited to executors or administrators or persons holding quasi-official relations with the estate, it may be noted that the statute gives the probate court authority to cite even strangers before it who have possession of the assets of the estate, or who are suspected of having concealed, embezzled or conveyed away any money or assets of the estate, and to compel a delivery thereof to the executor or administrator entitled to receive the same. (Gen. Stat. 1897, ch. 107, §§ 174–178 ; Gen. Stat. 1899, §§ 2885–2889.)

The general trend of the authorities is that the revocation of letters or the resignation or removal of an executor does not affect the authority of the probate court to require an accounting. So it has been held that where an executor or administrator resigns before the settlement of his accounts, and his resignation is accepted, the court does not thereby lose

jurisdiction over his person or the settlement of his accounts, and may proceed with the settlement in the same manner as if he had continued in the execution of his trust. (*Slagle v. Entrekin*, 44 Ohio St. 637, 10 N. E. 675. See, also, *Casoni et al. v. Jerome*, 58 N. Y. 315; *Nevitt v. Woodburn*, 160 Ill. 203, 43 N. E. 385; *Matter of Hood*, 104 N. Y. 103, 10 N. E. 35; *In re Radowich*, 74 Cal. 536, 16 Pac. 321.) In 1 Woerner on Administrators, 589, it is said:

"After revocation, removal or resignation, the former executor or administrator cannot complete a sale which he has been negotiating on behalf of the estate, nor collect assets, but the court has jurisdiction to settle his accounts as though he were still in office."

In Schouler's Executors and Administrators, section 520, it is said:

"The American rule of the present day is, therefore, with few exceptions, that the court of chancery, usually, has neither jurisdiction nor occasion to interfere in the settlement of the estate, and to order an accounting by an executor or administrator. And, even as to one who has resigned or been discharged from his trust, our law inclines to treat him as one whose accounts should be closed under probate direction, as in the case of one who has died in office."

It is true that some of the decisions cited are based on statutes which expressly authorize an accounting with a former executor or administrator, but the implication of our statute, as well as the power entrusted to our probate court, justifies the view which we have taken. Reference has been made in the argument to the cases of *Ingram v. Maynard*, 6 Tex. 130, and *Francis v. Northcote*, id. 185, which seem to hold to a contrary view, based apparently upon the provisions of the constitution and statutes of Texas, constituting the

court as an inferior tribunal, with jurisdiction limited to certain enumerated subjects. In matters of probate our court is not an inferior tribunal, and we have no doubt that it is the duty and within the power of the probate court to settle the accounts of a former executor, determine what shall be allowed him as compensation for his services and for expenses, and then to direct the turning over and delivery of the residue of the estate to his successor.

It is not for the successor to decide what allowance shall be made to Hudson for the partial execution of the trust, or for expenses incurred while he acted in that capacity. The orderly and legal course is that a full accounting and settlement shall be made by the former executor in the court having jurisdiction and control of the estate, and that the transfer of the assets and funds remaining in his possession shall be made to the successor under the direction and supervision of that court. The taking of the matter from the jurisdiction of the probate court cannot be sustained on the ground of circumlocution or a multiplicity of suits.

There is full power in the probate court to determine whether the estate has been faithfully administered, whether moneys have been improperly paid out or an improper distribution made, and what amount of money and assets should be in Hudson's hands and for which he is accountable, after allowance has been made for services and expenses. Section 26 of the executors' and administrators' act (Gen. Stat. 1897, ch. 107, § 25; Gen. Stat. 1899, § 2714) provides, it is true, that an administrator appointed in place of a removed executor is entitled to the possession of the estate, and may maintain an action against the former executor and

3 Actions on bond —conditions precedent.

Hudson v. Barratt.

his sureties on the bond, but nothing in the provision indicates that an accounting and settlement with the former executor are unnecessary. No good reason can be seen why the sureties on the executor's bond should be required to answer in court and harassed with litigation until it has been determined whether default has been made by the executor, or whether there is any liability on the bond, by the tribunal specially provided to make such determination. If an acounting is had in the probate court, and the executor makes a complete and satisfactory settlement, and turns over to his successor all the property and assets of the estate in his hands and for which he is accountable, there will be no necessity for litigation with the sureties on the bond, and hence there would be no ground for invoking the equitable jurisdiction of the district court. (*Weihe v. Statham*, 67 Cal. 84, 7 Pac. 143.)

We conclude that there was no occasion to interfere in the settlement of the estate in the probate court, and that until the settlement was had by the tribunal appointed for that purpose an action on the executor's bond could not be maintained.

The judgment of the district court will therefore be reversed and the cause remanded for further proceedings.