[No. 183. First Appellate District.—October 14, 1905.]

In the Matter of the Estate of ANGELIA R. SCOTT, De-
ceased. C. M. GERRISH, and FRANK GARCIA, Ex-
ecutors, Appellants, v. MORTIMER S. CHAMBER-
LAIN, RACHAEL JOHONNOTT, C. S. TILTON, Ex-
ecutors, and EUGENE WORMELL et al., Respondents.

Estates of Deceased Persons—Settlement of Account of Executors
—Expense in Obtaining Probate—Contest of Will—Review up-
on Appeal.—Upon appeal from a decree settling the accounts of
executors, the question whether the executors properly incurred
items of disbursement set forth in their accounts in obtaining
probate of the will in case of a contest thereof was to be deter-
mined by the court upon the evidence before it; and where the
evidence is not set forth in the record upon appeal error is not
to be presumed, and it cannot be said that the court erred in
refusing to allow them as a charge against the estate.

ID.—CONSTRUCTION OF CODE—ALLOWANCE OF COSTS—DISCRETION.—Section 1720 of the Code of Civil Procedure relates only to costs incurred in the appellate court, and does not import that this court has discretion to allow costs that the lower court had discretion to disallow.

ID.—REFUSAL OF DEVISEES AND LEGATEES TO CONTRIBUTE.—The fact that some of the devisees and legatees refused to contribute to the expenses of the contest of the will furnishes no legal reason for this court's interfering with the order in the absence of any showing that those who refused to contribute would not have received more if the will had been denied probate.

ID.—IMPROPER USE OF FUNDS—CHARGE OF INTEREST.—The court properly charged interest at the legal rate on funds drawn from bank by the executors and improperly disbursed in payment of items in the account which were disallowed by the court and which are not properly before this court for review.

ID.—SALES OF PERSONAL PROPERTY WITHOUT ORDER OF COURT—SURCHARGE OF VALUE AT TIME OF SALE.—Where the executors sold cooperage at private sale at a price in excess of the amount appraised without any order of court or notice of sale or order confirming the sale, their accounts showing sales at the appraised value were properly surcharged with what was shown to be the excess in actual value at the time of the sales, without regard to the amount of excess received.

ID.—ATTORNEYS' FEES—DEDUCTION AND INCREASE IN ALLOWANCE—EMPLOYMENT OF SEVERAL ATTORNEYS BY SEVERAL EXECUTORS.—Where the court allowed an aggregate sum to be drawn from court by three executors to pay attorneys' fees, without direction as to apportionment between attorneys employed by two of them and an attorney employed by the third, the court upon final settlement of the accounts had power to deduct an allowance from the amount paid to the former and to increase the allowance made to the executors for the latter. This only affects the settlement of the executors' accounts; and cannot conclude the attorneys, for the value of whose services the executor or administrator employing them is personally liable.

ID.—CONSTRUCTION OF CODE—POWERS OF MAJORITY.—Section 1355 of the Code of Civil Procedure, providing that "where there are more than two executors or administrators the act of a majority is valid," does not import that the majority can deprive the remaining executor or administrator of the assistance and advice of counsel.

APPEAL from a decree of the Superior Court of the City and County of San Francisco settling the final accounts of executors. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

A. E. Bolton, and Philip G. Galpin, for Appellants.

Houghton & Houghton, for Mortimer S. Chamberlain and Rachael Johonnott, Respondents.

John B. Gartland, for C. S. Tilton, Executor, Respondent.

Louis Seidenberg, and R. P. Clement, for Eugene Wormell et al., Respondents.

COOPER, J.—This is an appeal by the executors from portions of the decree settling their accounts and disallowing certain items therein.

1. The first item disallowed by the court is "Expenses of contest in the probate of will of Angelia R. Scott, deceased, $1,681.63."

Under the heading "Disbursements by Executors" are set forth in the accounts several items, aggregating $1,686.13, claimed to have been incurred for expenses in establishing the validity of the will. Upon the hearing at the settlement of the accounts the court made the following finding of fact in reference to these items:—

"I find that the items on the credit side of the second annual account, amounting to the sum of $1,686.13, including $1,560 drawn from the bank to pay the expenses of defending the will upon the contest for its admission to probate, are an improper credit, and ought not to be allowed excepting the item, 'January 15, 1899, by publication notice of the time and place for proof of the will, $4.50,' which is allowed. Total amount disallowed on this item, $1,681.63.

"And as the executors did, on the 11th day of June, 1901, without any order of court, draw from the funds of the estate deposited in the Donohoe-Kelly Banking Company's bank the sum of $1,560, which sum was used by said executors in part payment of the above disallowed items of costs, said executors must be charged with interest on said amount of $1,560 at the rate of seven per cent per annum from the 11th day of June, 1901, to the time of the payment of said money back into the estate, or until the same is deposited in the Donohoe-Kelly Banking Company's bank to the credit of the executors of said estate."

In the decree settling the said accounts the court disallowed

the above items, and surcharged the accounts with their amount.

The facts connected with the above item of fifteen hundred and sixty dollars are as follows, viz.: In order to raise money to meet the expenses to be incurred in defending the will against the contest for its probate, certain devisees advanced that amount of money for such expenses, and, as shown by the finding, on the eleventh day of June, 1901, the executors withdrew this amount from the funds of the estate deposited in the bank, apparently for the purpose of reimbursing the said devisees, and credited themselves in their account with the payments of the items of expense. The mention of the transaction in the finding is relevant only for the purpose of fixing the amount which the executors are required to return to the estate, and the date from which interest thereon is to be paid by them.

The executors have not specified any particulars in which the evidence before the court was insufficient to justify the above finding of fact, and it does not appear from the bill of exceptions that they took or had entered of record any exception to the order of the court in disallowing said items. Neither is there any evidence in the bill of exceptions which in any way illustrates the character of those expenses; and the items which form by far the greater part of the amount disallowed by the court are not by their terms as set forth in the account *prima facie* of such a character as would require the court to allow them as a charge against the estate.

Whether the executors properly incurred the items of expense set forth in their account in obtaining probate of the will was to be determined by the court upon the evidence before it in reference thereto. Error is not to be presumed, and in the absence of the evidence before it we cannot say that the superior court erred in refusing to allow them as a charge against the estate.

Appellants contend that section 1720 of the Code of Civil Procedure authorizes this court to allow and order paid the costs incurred during the contest. The section, as to this court, refers to costs incurred here or by reason of the appeal. It does not mean that this court has discretion to allow costs that the lower court had discretion to disallow. The fact that some of the devisees and legatees refused to contribute to the ·

expenses of the contest furnishes no legal reason for interfering with the order. It may be that the devisees who did contribute are the ones to whom most of the property is devised or bequeathed, and that those who refused to contribute would have received more if the will had been denied probate.

2. Appellants claim that the court erred in surcharging the executors with interest on sums amounting to two hundred and thirty dollars drawn out of the bank for the purpose of paying a bookkeeper for the estate. The court found that two hundred and thirty dollars had been drawn, without any order of court, from the funds of the estate in the Donohoe-Kelly Banking Company's Bank, and paid to McGowan as bookkeeper, and that "such amount was improperly paid, is hereby disallowed, and the executors must be charged with interest on the several sums drawn out of said bank . . . at seven per cent per annum for the respective times said checks were drawn to the time of the payment of said money back into the estate."

The finding of the court that the money was improperly paid is not questioned. The amount of interest charged is not computed nor stated; but conceding that the money, upon which the interest was charged, was improperly used by the executors, they are responsible for interest on it at the legal rate. The question as to whether or not the executors had the right to employ and pay the bookkeeper out of the funds of the estate is not before us.

3. The next contention is that the court erred in surcharging the accounts with $836.88, the excess in value of 235,043 gallons of redwood cooperage over the amount returned in the account. The finding of the court as to this item is as follows: "The number of gallons of redwood cooperage sold and accounted for in this account is 235,043. The redwood cooperage was appraised in the inventory filed by the executors on the 9th of May, 1900, at ½c per gallon. The executors sold the greater part of said cooperage at ½c per gallon, selling some in excess of that amount, and some at ⅞c per gallon, in various lots from time to time, without having obtained any order of the court for that purpose, and said sales were made at private sale without any notice of sale being given, and no return of sales of redwood cooperage has ever been made to this court; and no order has heretofore

been made confirming said sales. The value of such cooperage at the time of sales being ⅞c per gallon, the executors are to be charged with this cooperage at that price and credited with the total amount of sales accounted for in said accounts.

"The executors are therefore to be charged with $2,056.62 less $1,219.75, which is the amount of said cooperage accounted for as sold, leaving a balance of $836.88, with which the executors should be charged."

After a careful examination we are of opinion that the evidence supports this finding. No order of sale was obtained before selling the cooperage. The sales were made without legal notice, and no returns of sales made except in the accounts. The accounts do not give the names of all the various purchasers, and it was only by the diligence of the respondent's counsel that most of them were found. It was shown, contrary to the accounts, that many sales were made in excess of one half cent per gallon as stated in the accounts.

The witness Carpy testified that he had been engaged for twenty-five years in the wine business; that he had seen the cooperage, knew the value of that kind of cooperage, and had had a great deal of experience in buying and selling that kind of property; that in his opinion the cooperage would sell for three quarters of a cent per gallon. The court found, and the evidence shows, that several sales were made at seven eighths of a cent per gallon and one at two thirds of a cent per gallon. The executors admitted that they had made sales in excess of one half of a cent per gallon in the face of their verified accounts showing all sales at one half of a cent.

By selling the cooperage at private sale without an order of court, the executors became responsible to the estate for its value. (*In re Radovich,* 74 Cal. 538, [5 Am. St. Rep. 466, 16 Pac. 321].)

If the sales had been made for the full value of the property and the accounts had shown such sales correctly, giving the date of sale and the name of the purchaser in each separate case, the question would be different.

We do not attach much importance to appellant's contention that it is not shown that more money was received for the total cooperage sold than stated in the accounts. It might have been very difficult for the parties contesting the accounts to make such proof; and even conceding that the total amount

of money received for cooperage is credited to the estate in the accounts, the executors having sold without an order of court are responsible for the value of the property sold.

4. Finally. it is claimed that the court erred in making an order deducting from the item of forty-seven hundred and fifty dollars paid as attorneys' fees to Galpin & Bolton the sum of seven hundred and fifty dollars.

The executors had drawn from the bank, by order of court, long before the account was settled the sum of five thousand dollars to be applied as attorneys' fees. The court did not direct, and in fact had no right to direct, the manner in which the five thousand dollars should be apportioned between the attorneys. The two executors, however, who received the money, paid forty-seven hundred and fifty dollars of it to their own attorneys, Messrs. Galpin & Bolton, and two hundred and fifty dollars to the attorney of the other executor, before any order had been made allowing attorneys' fees to either of the executors. The executors, although represented by different attorneys, filed their accounts jointly, in which they ask that the court allow them seventy-five hundred dollars as attorneys' fees for Messrs. Galpin & Bolton, who represented two executors, Garcia and Gerrish, and two thousand dollars as attorneys' fees for John B. Gartland, who represented and advised Tilton, the other executor. The court, in effect, found that the two executors who employed Messrs. Galpin & Bolton were entitled to be allowed four thousand dollars as the reasonable attorneys' fees incurred by them, and that the executor who employed Mr. Gartland was entitled to one thousand dollars as the amount of reasonable attorneys' fees incurred by him. The total amount allowed was five thousand dollars; and it makes no difference to the executors as representatives of the estate as to whom it is paid. The rule is well settled that attorneys' fees are not a claim by the attorney against the estate. The administrator or executor must be allowed reasonable attorneys' fees paid or incurred in the necessary management of the estate, but such attorneys' fees are allowed to the administrator or executor, and not to the attorney. (*McKee* v. *Soher,* 138 Cal. 370, [71 Pac. 438, 649], and cases cited.)

The executor or administrator is personally liable to the attorney employed by him for the reasonable value of the

services of such attorney, regardless of the amount allowed by the probate court, the probate court not having power to adjudicate between the attorney and the executor or administrator as to the amount of the fee. (*Briggs* v. *Breen,* 123 Cal. 660, [56 Pac. 683, 686].) Therefore the order made in this case does not conclude the attorneys as to the amount of their respective fees. The executors, in their official capacity, have no interest in settling the controversy between them. The effect of the appeal as to the executors represented by Galpin & Bolton is that the court did not allow a sufficient sum to cover the reasonable attorneys' fees incurred by them. If they are liable in excess of the amount allowed them by the court they may be unfortunate, but there is no contention here that the amount of fees allowed by the probate court was too small. While the court had no power to fix and apportion the attorneys' fees, it did have the power to allow the executors represented by Messrs. Galpin & Bolton four thousand dollars incurred as attorneys' fees, and the executor represented by Gartland one thousand dollars incurred as attorneys' fees.

Taking the accounts, the decree and the findings together, we hold this to be the effect of the decree and order as to attorneys' fees.

In *Estate of Brignole,* 133 Cal. 163, [65 Pac. 294], in the final settlement the court below allowed seven hundred and fifty dollars on account of legal services rendered two of the executors, and the same amount to the third executor, who had not employed the same attorney. The order was affirmed.

In *Estate of Dudley,* 123 Cal. 256, [55 Pac. 897], it was held that where two sisters were jointly administratrices of an estate, and unfriendly, each employing different attorneys, the trial court properly allowed to each a reasonable sum as attorneys' fees.

In *In re Delaphine's Estate,* 3 N. Y. Supp. 202, it was held that where two executors each employed an attorney each was entitled to be reimbursed for his attorney's fees incurred in good faith. The court said: "The deceased person must be held to have contemplated, not only the possibility of differences of opinion among his executors, but the extreme probability that such differences would arise. In such an event it surely cannot be held that one shall submit to the

other; that he shall subordinate to the other his own honest conception of a proper line of policy and official duty. ' There can be no doubt, either, but that it is the plain duty of the executors to honestly strain after harmony in all respects affecting the welfare of the estate. On such appearing to be the history of their official acts, there can be no difficulty in disposing of any question of the expense of their administration. . . . After qualification they would stand equal before the law, and in the precise attitude that the deceased wished and expected when he named them in the will; and except for misconduct they could not be removed, nor their powers, as set out in their letters of appointment—the will—be limited or restricted. . . .

"Both executors were entitled to the assistance of good lawyers. They employed them, and promised, under the obligations of a lawful contract, to pay them proper compensation, and such compensation has been ascertained, and they have been paid. The sums so paid in this case appear to have been fully earned, and whether really the services of either or both the attorneys for the respective executors were or were not beneficial to the estate does not signify on the question under consideration. . . .

"I have no difficulty in holding . . . that they are each entitled to be reimbursed out of this estate for the sums paid by them respectively to their respective attorneys."

If appellants' contention in this case be correct, then two of three, or three of five, executors could entirely ignore the minority, and not even allow such minority the assistance of counsel. If three executors should each honestly differ with the others, and each employ counsel of his own selection, which one would be entitled to his attorneys' fees? It is true that in such cases the estate may be put to more expense for attorneys' fees, but that was for the deceased to consider in making his will. Certainly a testator who appoints three friends in whose judgment and integrity he confides does not intend that one of them shall be ignored and denied costs which are allowed to the others.

Counsel for appellants rely on section 1355 of the Code of Civil Procedure which provides that "where there are more than two executors or administrators, the act of a majority is valid." The language quoted refers to the acts under the

will, or in relation to the trust, as is shown by reading the entire section. It does not mean that the act of the majority can deprive one of the executors or administrators of the assistance and advice of counsel.

The order allowing the accounts is affirmed in all respects.

Harrison, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 13, 1905.